**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| DAVID HOLLAND, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>RITEAID CORPORATION, JOHN T. STANDLEY, DARREN KARST, HEYWARD DONIGAN, and MATTHEW C. SCHROEDER,<br><br>        Defendants. | CLASS ACTION<br><br>No. 1:23-cv-00589-JG<br><br>HONORABLE JAMES S. GWIN |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' UNOPPOSED MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

## I.   INTRODUCTION

Defendants John T. Standley, Darren Karst, Heyward Donigan, Matthew C. Schroeder ("Individual Defendants"), and Rite Aid Corporation ("Rite Aid," with the Individual Defendants, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the Eastern District of Pennsylvania ("EDPA").   This is a putative class action asserting claims for violations of the federal securities laws, alleging that statements by Rite Aid and its current and former officers in public filings were false or misleading because they did not disclose certain alleged facts about Rite Aid's compliance with the Controlled Substances Act, and other compliance issues related to filling prescriptions.   ECF No. 1, Complaint, ¶ 41.   Rite Aid is a Pennsylvania-based corporation, with its headquarters based in Philadelphia.   While this Court is a proper and adequate venue, "securities suits are routinely transferred to defendants' corporate headquarters," and good cause exists to do so here.   *See Jacobowitz v. Range Res. Corp.*, No. 2:21-CV-00301-RJC, 2021 WL 2457545, at *5 (W.D. Pa. June 16, 2021).

Pennsylvania is a more convenient forum for the Individual Defendants, half of whom reside in Pennsylvania.   The vast majority of Rite Aid's corporate employees, including the likeliest potential witnesses in this case, reside in Pennsylvania.   All of the alleged misstatements originated from Rite Aid's corporate headquarters in Pennsylvania.   Furthermore, no potential key witnesses reside in Ohio.   In addition, neither the shareholder who originally filed this case, nor the recently appointed Lead Plaintiff, reside in Ohio, and Lead Plaintiff does not oppose this motion.   Accordingly, transferring this matter to the EDPA will increase convenience for the parties and the anticipated witnesses, will ensure relevant witnesses are within the subpoena power of the presiding court, is supported by the public interest, and will otherwise promote the interests of justice.   Collectively, these factors strongly favor transfer.

## II.    FACTS

On March 20, 2023, David Holland, who resides in Loganville, Georgia, filed this putative class action in this Court asserting claims against Rite Aid and its current and former executive officers, John T. Standley, Darren Karst, Heyward Donigan, and Matthew C. Schroeder. *See* ECF No. 1. The current complaint, filed by Karon LLC and the Rosen Law Firm on behalf of Mr. Holland, asserts claims against Defendants under (Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.*

Pursuant to the procedures outlined in the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 et seq. (the "PSLRA"), which governs private securities fraud actions like this one, Mr. Holland and other potential plaintiff representatives filed motions to become Lead Plaintiff. ECF Nos. 6-12, 14, 17, 18, 25. On June 22, 2023, the Court entered an order appointing Jennifer DaSilva as Lead Plaintiff, and her counsel Levi & Korinsky LLP as Lead Counsel. ECF No. 27. Ms. DaSilva resides in Canton, Michigan. ECF No. 6-8, ¶ 2. Lead Plaintiff intends to file an amended complaint in this case, and Defendants anticipate that they will move to dismiss any amended complaint. ECF No. 28 at 3.

Defendant Rite Aid is a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania. ECF No. 1, Complaint, ¶ 8. Rite Aid is a holding company that holds the stock of its subsidiaries. Bassett Declaration, ¶ 3. Rite Aid Hdqtrs. Corp. ("RAHC") is a wholly-owned subsidiary of Rite Aid. *Id.* Rite Aid's corporate employees are employed by RAHC. *Id.* Rite Aid's corporate headquarters was located in Camp Hill, Pennsylvania until 2022, when Rite Aid moved its headquarters to Philadelphia, Pennsylvania. *Id.*, ¶ 8. Rite Aid maintains a corporate operations facility in Etters, Pennsylvania (near Camp Hill) where certain corporate employees maintain office space, and most others work remotely from their homes, the majority of which are in central Pennsylvania. *Id.*

2

The Individual Defendants are all current or former employees of RAHC. Matthew Schroeder lives in Chambersburg, Pennsylvania. Bassett Declaration, ¶ 4. Mr. Schroeder is Rite Aid's current Chief Financial Officer and regularly travels to Rite Aid's headquarters in Philadelphia. *Id.* Darren Karst, Rite Aid's former Chief Financial Officer and Chief Administrative Officer, resides in Lake Forest, Illinois. *Id.*, ¶ 5. Heyward Donigan, Rite Aid's former Chief Executive Officer, resides in Tampa, Florida. *Id.*, ¶ 6. John T. Standley, Rite Aid's former Chief Executive Officer and Chairman of the Board, on information and belief, resides in Mechanicsburg, Pennsylvania. *Id.*, ¶ 7.

## III.    ARGUMENT

### A.    Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). "[T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Id.,* 376 U.S. at 616.

Accordingly, "[e]ven where venue is proper, a district court may exercise its broad discretion to transfer a civil action to a more convenient forum pursuant to § 1404(a). . . . The decision of whether a motion to transfer venue pursuant to § 1404(a) should be granted is within the sound discretion of the trial court." *Jewell v. Aaron's, Inc.*, No. 1:11-CV-02314-DCN, 2012 WL 589488, at *1 (N.D. Ohio Feb. 22, 2012) (citations omitted). The burden of establishing that

3

transfer is proper rests with the movant. *Picker Int'l, Inc. v. Travelers Indem. Co.,* 35 F. Supp. 2d 570 (N.D. Ohio 1998).

**B.      This Case Could Have Been Brought In The EDPA.**

The threshold question under 28 U.S.C. § 1404(a) is whether the case "might have been brought" in the EDPA.  *Van Dusen*, 376 U.S. at 616.  This requirement is met.  This case involves claims under the Exchange Act, which states that venue is proper for claims thereunder wherever "the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa(a). The EDPA, which is located in Philadelphia, is therefore a proper venue because Rite Aid's headquarters is located in Philadelphia.

**C.      The Relevant Factors Weigh In Favor Of Transfer.**

In ruling on a motion to transfer, courts should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)); *accord Nationwide Mut. Fire Ins. Co. v. Barbour*, No. 5:15 CV 456, 2015 WL 5560209, at *1 (N.D. Ohio Sept. 21, 2015) (citing *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537–38 (6th Cir. 2002)). "Private factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost for obtaining attendance of willing witnesses; the possibility of inspecting the premises, if appropriate; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nationwide Mut. Fire Ins. Co.*, 2015 WL 5560209, at *1 (citations omitted).  "Public factors include: administrative difficulties of courts with congested dockets; the burden of jury duty on members of a community with no connection

to the litigation; the local interest of having localized controversies decided at home; and the appropriateness of having [] cases tried in a forum which is familiar with the governing law." *Id*. "No one factor is dispositive; rather transfer is appropriate if the balance of these factors weighs 'strongly' in favor of transfer." *Id.* at *2; *accord LifeMasters Supported SelfCare, Inc. v. CareSource*, No. 1:08-CV-00761, 2008 WL 11351567, at *2 (N.D. Ohio May 15, 2008) (Gwin, J.). Here, the balance of the factors weighs strongly in favor of transfer.

### 1.    Plaintiff's choice of forum does not weigh against transfer.

The first factor a court generally considers is the plaintiff's choice of forum. In this case, the plaintiff's choice of forum does not weigh against transfer because the recently appointed Lead Plaintiff did not choose this forum, as she did not file the original complaint. Moreover, Lead Plaintiff does not oppose transfer.

Even if the plaintiff's choice of forum was a factor here, it should be accorded little weight. A plaintiff's choice of forum is generally accorded less weight if the forum selected by the plaintiff is not the forum in which the plaintiff resides or the forum in which the operative facts took place. *Shapiro v. Merrill Lynch & Co.,* 634 F.Supp. 587, 589 (N.D. Ohio 1986); *accord Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) ("where the plaintiff does not reside in the chosen forum[,] courts assign less weight to the plaintiff's choice."). Lead Plaintiff does not reside within this district. In connection with her motion for Lead Plaintiff, Ms. DaSilva submitted a declaration stating that she lives in Canton, Michigan. ECF No. 6-8, ¶ 2. The mere fact that this case was filed in this district by a different plaintiff should therefore be regarded little weight.

In addition, "the locus of operative events in a securities action is where the alleged misrepresentations were made." *City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, No. 10 CIV. 376, 2010 WL 2035130, at *4 (S.D.N.Y. May 21, 2010). Rite Aid's statements that are

5

challenged in this case, or could possibly be challenged in an amended complaint, were disseminated from either its former headquarters in Camp Hill, Pennsylvania, or from its current headquarters in Philadelphia, Pennsylvania. Accordingly, the operative facts took place in Pennsylvania.

Moreover, in this case Lead Plaintiff purports to represent a putative nationwide class of purchasers of Rite Aid securities. *See generally,* ECF No. 1. In nationwide securities fraud putative class actions, the plaintiff's choice of forum is discounted. *See Jacobowitz*, 2021 WL 2457545, at *4 ("In a class action such as this, where the allegations are that the defendant violated federal securities law, the courts are more apt to give plaintiff's choice of forum less weight, especially as the potential members of the class will be scattered across the United States"); *Garity v. Tetraphase Pharms. Inc.*, 2019 WL 2314691, at *2 (S.D.N.Y. May 30, 2019) ("courts afford little weight to a plaintiffs choice of forum in a securities class action") (collecting cases). "This is particularly true where, as here, the plaintiff purports to represent a geographically dispersed class." *Garity*, 2019 WL 2314691, at *2; *see also ChannelAdvisor Corp. Sec. Litig.*, 2015 WL 4064625, at *1 (S.D.N.Y. July 2, 2015) (finding plaintiffs choice of forum even "less compelling" where "plaintiffs choose a forum that is not their home district"). Plaintiff's choice of forum thus does not weigh against transfer.

> **2.      The convenience of the parties and likely witnesses strongly favors transfer.**

"Convenience of witnesses is one of the most important factors in determining whether to grant a change of venue under § 1404(a)." *Phelps v. United States*, No. 1:07-CV-02738, 2008 WL 5705574, at *2 (N.D. Ohio Feb. 19, 2008). This case is a securities fraud putative class action. The crux of the current complaint challenges, and Defendants expect that any amended complaint filed by Lead Plaintiff will also challenge, whether certain nationwide public

6

statements made by Rite Aid and the Individual Defendants in securities filings were false and misleading.  The primary claim, under Section 10(b) of the Exchange Act, is heavily reliant on the states of mind of the Individual Defendants who made the challenged statements.  Accordingly, the Individual Defendants will be the most critical witnesses in this case.  The EDPA is a significantly more convenient venue for the Individual Defendants, weighing strongly in favor of transfer.

Mr. Schroeder, Rite Aid's current Chief Financial Officer, resides in Chambersburg, Pennsylvania.  Bassett Declaration, ¶ 4.  Mr. Schroeder regularly travels to Rite Aid's headquarters in Philadelphia.  *Id.*  Similarly, Mr. Standley, Rite Aid's former CEO and Chairman of the Board, on information and belief, resides in Mechanicsburg, Pennsylvania.  *Id.*, ¶ 7.  It would be significantly more convenient for Mr. Schroeder and Mr. Standley to attend a deposition, hearing, or trial in Philadelphia, Pennsylvania than in Cleveland, Ohio where this Court sits.  The closest airport to their residences, by several hours, is the Harrisburg airport.  According to Google flights, the Harrisburg airport has no direct flights to Cleveland.  Because they do not live within reasonable driving distance from another airport that flies directly to Cleveland, it would require them to either travel first to Philadelphia, then fly to Cleveland, or to drive over five hours to Cleveland.  In either scenario, Philadelphia is the far more convenient alternative.

Mr. Karst, Rite Aid's former Chief Financial Officer and Chief Administrative Officer, resides in Lake Forest, Illinois.  Bassett Declaration, ¶ 5.  Mr. Karst's residence is convenient to Chicago's O'Hare airport.  Google flights reflects nine direct weekday flights between O'Hare and Cleveland, and fourteen direct weekday flights between O'Hare and Philadelphia.  Ms. Donigan, Rite Aid's former Chief Executive Officer, resides in Tampa, Florida.  Bassett

7

Declaration, ¶ 6.  Google flights reflects two direct flights per weekday back and forth between Tampa and Cleveland, and six direct flights per weekday back and forth between Tampa and Philadelphia.  Because there are more flight options to Philadelphia from both of their locations, travel to Philadelphia would be slightly more convenient for Mr. Karst and Ms. Donigan.

Philadelphia is also a significantly more convenient location for other Rite Aid corporate employees who may be called as witnesses.  Until 2022, Rite Aid's corporate headquarters was located in Camp Hill, Pennsylvania.  Bassett Declaration, ¶ 8.  In 2022, it relocated to Philadelphia.  *Id.*  At that time, Rite Aid's corporate employees largely became a remote workforce.  *Id.*  Rite Aid maintains a corporate operations facility in Etters, Pennsylvania.  *Id.* As a result of these changes, a majority of Rite Aid's corporate employees continue to reside in central Pennsylvania. *Id.*

The current complaint challenges statements made in Rite Aid's Annual Reports from 2017 through 2021.  ECF No. 1, Complaint ¶¶ 18-39.  Lead Plaintiff may choose to challenge other statements from other Rite Aid securities filings in an amended complaint.  Rite Aid expects that Lead Plaintiff may seek testimony from Rite Aid corporate employees involved in preparing the securities filings she chooses to challenge.  Rite Aid's Corporate Financial Accounting team prepares and files securities filings for Rite Aid, including its Forms 10-K and 10-Q.  Bassett Declaration, ¶ 10.  The team is comprised of a Senior Director, Manager, and two Senior Accountants.  *Id.*  All of the members of the team that prepares and files securities filings for Rite Aid reside in central Pennsylvania, including Carlisle, Mechanicsburg, and Harrisburg. *Id.*, ¶ 11.

The current complaint further alleges that the challenged statements were false or misleading because they fail to disclose certain alleged facts about Rite Aid's compliance with

the Controlled Substances Act, and other compliance issues related to filling prescriptions.  *See, e.g.,* ECF No. 1, Complaint ¶ 41.  Accordingly, Rite Aid also expects that Lead Plaintiff will seek testimony from Rite Aid's corporate employees who were involved with developing, implementing and overseeing policies and procedures on these topics that are used at Rite Aid stores throughout the United States, including with respect to the dispensing of prescription opioids and other high alert medications.  Bassett Declaration, ¶ 9.

Rite Aid's Regulatory Affairs Department ("Regulatory Affairs") is responsible for overseeing the regulatory aspects of Rite Aid's business, including quality assurance and regulatory compliance relating to pharmacy practice.  *Id.*, ¶ 12.  As part of that responsibility, Regulatory Affairs provides information, systems and training that support and assist Rite Aid pharmacists in exercising their professional judgment, including with respect to filling prescriptions for controlled substances.  *Id.*  Regulatory Affairs has also implemented additional compliance checks at the corporate level in connection with controlled substance prescriptions. *Id.*  Rite Aid's Government Affairs Department ("Government Affairs") is a subdivision of the Regulatory Affairs Department that is responsible, among other things, for following state and federal legislation with potential impacts on Rite Aid's business, overseeing compliance with state prescription drug monitoring programs, and handling matters relating to the Drug Enforcement Administration.  *Id.*, ¶ 13.  Government Affairs developed and runs Rite Aid's Prescriber Review Program, under which Rite Aid monitors the prescribing activity of potentially suspicious prescribers.  *Id.*  Rite Aid's current Director of Government Affairs resides in Harrisburg, Pennsylvania.  *Id.*, ¶ 15.  Rite Aid's current VP of Regulatory Affairs and Government Affairs resides in Bowie, Maryland.  *Id.*, ¶ 16.  Rite Aid's former (until 2022) VP of Regulatory Affairs resides in Boiling Springs, Pennsylvania.  *Id.*, ¶ 17.

Rite Aid's Pharmacy Operations Department is responsible for, among other things, overseeing Rite Aid's High Alert Controlled Substances Validation Process, which is a six-step process Rite Aid pharmacists use when validating certain high-risk prescriptions, including for opioids. *Id.*, ¶ 14. Rite Aid's former (until 2023) VP of Pharmacy Operations resides in Mechanicsburg, Pennsylvania. *Id.*, ¶ 18. As the former VP of Pharmacy Operations left Rite Aid in early July 2023, the role has not yet been filled with a new employee. *Id.*, ¶ 19.

Thus, a majority of the Rite Aid corporate employees in relevant roles continue to reside in and around central Pennsylvania. It would be significantly more convenient for those potential witnesses to appear in EDPA than in this Court, for the same reasons described above with respect to Mr. Schroeder and Mr. Standley. It would also be more convenient for Rite Aid's VP of Regulatory Affairs and Government Affairs to come to Philadelphia than to Cleveland. That individual resides just outside of Washington D.C. in Maryland. Transportation by car or train from that location to Philadelphia is far more convenient and less expensive and burdensome than flying to Cleveland.

Moreover, transfer would not reduce the convenience to Lead Plaintiff. Lead Plaintiff lives in Canton, Michigan, a suburb of Detroit. ECF No. 6-8, ¶ 2. Accordingly, she would need to travel to come to either this district or to the EDPA. Defendants submit that it would be more convenient for Lead Plaintiff to travel to Philadelphia because Google flights reflects that there are between seven and nine nonstop flights per day between Detroit and Philadelphia. In contrast, it reflects only four nonstop flight options available from Detroit to Cleveland.

For these reasons, the collective convenience of the parties and likely witnesses in this case weighs strongly in favor of transfer.

      **3.**      **Relevant witnesses are likely to be outside of this Court's subpoena power, but within the subpoena power of the EDPA.**

The private interest factors weigh further in support of transfer because certain non-parties who may be witnesses would be subject to the subpoena power of the EDPA, while they would not be similarly subject to this Court's subpoena power.

The ability to subpoena unwilling witnesses to the forum is another private interest factor to consider. *LifeMasters*, 2008 WL 11351567, at *2 n.2. Assuming that Defendant Rite Aid had sufficient control over the current employees of its subsidiary RAHC to compel their testimony (which Rite Aid does not concede), any employees who are not officers, directors, or managing agents would still need to be subpoenaed to testify. *See E.E.O.C. v. Honda of Am. Mfg., Inc.*, No. 2:06-CV-0233, 2007 WL 682088, at *2 (S.D. Ohio Feb. 28, 2007) ("If the witness is not an officer, director, or managing agent of a corporate opponent, '[s]uch a witness must be subpoenaed pursuant to Rule 45.'").

Moreover, some of the individuals who Rite Aid has already identified as potentially having relevant knowledge are former employees and would no longer be under either Rite Aid's or RAHC's control. Bassett Declaration, ¶¶ 17, 18. Accordingly, those witnesses must be subpoenaed. *See Novovic v. Greyhound Lines, Inc.*, No. 2:09-CV-00753, 2012 WL 252124, at *8 (S.D. Ohio Jan. 26, 2012) ("Witnesses who are no longer employees of [the party corporation] are not parties, and must be individually and personally served with a subpoena to compel their appearance.").

Under Rule 45, such witnesses may only be compelled by a subpoena to attend a trial, hearing, or deposition within 100 miles of, or within the state, where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A), (B). As noted above, the majority of Rite Aid's corporate employees live in central Pennsylvania. *See supra* §

11

III(C)(2); Bassett Declaration, ¶ 8.  Certain of Rite Aid's potentially relevant non-party former employees also reside in Pennsylvania.  Bassett Declaration, ¶¶ 17, 18.  Since certain of those likely witnesses reside within the state of Pennsylvania, they would be subject to the EDPA's subpoena power under Rule 45 to compel their appearance in the EDPA.  All of those witnesses would conversely be outside of this Court's subpoena power to compel them to appear in this Court, because they reside out of state and more than 100 miles away.  This factor weighs strongly in favor of transfer.

### 4.    Public interests favor transfer.

The public interests are either neutral, or favor transfer.  First, the applicable laws in this case are the federal securities laws, with which this Court and the EDPA are equally familiar.  This factor is neutral.

Second, the claims in this case challenge public statements made by Defendants, including in Rite Aid's securities filings.  The statements in the current complaint were disseminated from Rite Aid's former headquarters in Camp Hill, Pennsylvania, and any additional statements Lead Plaintiff may choose to challenge would likewise be disseminated from Camp Hill, Pennsylvania or from Rite Aid's new headquarters in Philadelphia.  "[T]he locus of operative events in a securities action is where the alleged misrepresentations were made."  *City of Pontiac*, 2010 WL 2035130, at *4.  Thus, to the extent there is any location-specific interest, it weighs in favor of resolving the claims against Rite Aid in Pennsylvania.

Finally, docket congestion favors transfer.  According to the U.S. Courts Federal Court Management Statistics, as of March 2023, this district has nearly twice as many pending cases per judgeship as the EDPA.  *See* United States District Courts Judicial Caseload Profiles at pp. 16, 42, available at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile 0331.2023.pdf (reflecting active cases per judgeship is 371 for EDPA and 621 for N.D. Ohio).

12

Consistently, the statistics also reflect that the median time for civil cases to move from filing to trial in the EDPA is 23.5 months, compared to 37.1 months in this district. *Id.* In combination, the public interest factors favor transfer to the EDPA.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the relevant factors weigh strongly in favor of transfer and request that the Court grant their unopposed motion and transfer this matter to the EDPA.

Dated:    July 20, 2023                    /s/ *Daniel M. Finer*

Daniel M. Finer
MORGAN LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219-6401
Phone: 412-560-3300
Fax: 412-560-7001
daniel.finer@morganlewis.com

Michael L. Kichline (admitted *pro hac vice*)
Laura H. McNally (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19104
Phone: 215-963-5000
Fax: 215-963-5001
michael.kichline@morganlewis.com
laura.mcnally@morganlewis.com

*Counsel for Defendants RiteAid Corp., John T.*
*Standley, Darren Karst, Heyward Donigan, and*
*Matthew C. Schroeder*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was electronically filed on July 20, 2023 with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to all

registered users.

*/s/ Daniel M. Finer*
Daniel M. Finer
