**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID HOLLAND, Individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) No. 2:23-cv-02962-KBH |
| RITE AID CORPORATION, HEYWARD DONIGAN, MATTHEW C. SCHROEDER, JAMES PETERS, JOCELYN KONRAD, JOHN T. STANDLEY, DARREN W. KARST, and ELIZABETH BURR, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**REPLY IN SUPPORT OF
INDIVIDUAL DEFENDANTS' MOTION TO STAY**

The Individual Defendants[1] seek a stay of the claims against them pending defendant Rite Aid's scheduled bankruptcy confirmation hearing. This case is fundamentally against Rite Aid (against which the litigation is automatically stayed), and so allowing it to proceed without Rite Aid risks inconsistent results, would distract from Rite Aid's reorganization efforts, and would threaten Rite Aid's ability to protect its own interests in the litigation. In opposition, Plaintiff dedicates several pages to arguing that the automatic stay under § 362(a) of the Bankruptcy Code should not apply to the Individual Defendants. This is a red herring. The Individual Defendants seek a stay pursuant to the Court's inherent powers to control its docket, not the Bankruptcy Code. In response to the arguments the Individual Defendants do make, Plaintiff's Opposition merely attempts to downplay the harm to the defendants that would occur from continuing with

---

[1] Capitalized terms used herein are defined in the Individual Defendants' Motion to Stay (Dkt. No. 49).

this case, rather than raise considerations for the Court that would tip the scale in its favor. Although Plaintiff vaguely alludes to unspecified "harms" she will allegedly suffer because of the six-week stay, she does not identify any such alleged harms.  Accordingly, upon consideration of all relevant facts, a stay until March 8, 2024 is appropriate in this case.

**I.**      **The Motion to Stay is Properly Considered Under the *Adelphia* Factors.**

Plaintiff argues that the factors the Individual Defendants outlined for the Court to consider, which Plaintiff calls the *Adelphia*[2] factors, are improper because they originated from *United National Insurance*, which decided a motion to sever, not a motion to stay.  *United Nat. Ins. Co. v. Equip. Ins. Managers, Inc.*, No. CIV. A. 95-CV-0116, 1997 WL 241152, at *1 (E.D. Pa. May 6, 1997).  As described below, this argument is belied by case law within the Third Circuit applying the *Adelphia* factors to consider stays pending bankruptcy.  Nonetheless, both the *Adelphia* factors and Plaintiff's factors support a stay in this case.

As a preliminary matter, the motion to sever in *United National Insurance* involved the question of whether the court should sever the plaintiff's claims against non-debtor defendants to allow the case against them to move forward during the debtor defendant's bankruptcy.  *United Nat. Ins.*, 1997 WL 241152, at *2.  Although procedurally slightly different, this is substantively the same question presented here: whether claims against non-debtor defendants should proceed pending the debtor's bankruptcy.  This procedural difference is hardly the dispositive distinction Plaintiff makes it out to be.

Moreover, since *United National Insurance*, courts in the Third Circuit have repeatedly applied this test to "determine[e] whether a court should proceed without a party whose absence

---

[2] *In re Adelphia Commc'ns Sec. Litig.*, No. 02-cv-1781, 2003 WL 22358819 (E.D. Pa. May 13, 2003)

from the litigation is compelled by other reasons"—specifically, bankruptcy.  *Smith v. Dominion Bridge Corp.*, No. 96-cv-7580, 1999 WL 111465, at *4 (E.D. Pa. Mar. 2, 1999); *see also Adelphia*, 2003 WL 22358819, at *6-7; *In re Loewen Grp., Inc. Sec. Litig.*, No. 98-cv-6740, 2001 WL 530544, at *2 (E.D. Pa. May 16, 2001).

Plaintiff's attempts to grapple with this case law fall flat.  With respect to *Smith* and *Adelphia*, Plaintiff merely suggests the court applied the wrong standard.  *See* Opp. at 9 n. 7 ("The very nature of this factor further demonstrates the inapplicability of the *Adelphia* test to a motion to stay… The lack of detailed analysis provided in [*Smith* and *Adelphia*] further proves this point.").  Plaintiff attempts to distinguish *Loewen* by arguing that the plaintiff in *Loewen* admitted the defendant debtor was indispensable to the proceedings, which Plaintiff has not done here.  However, whether or not Plaintiff says it in those words, here, as in *Loewen*, "the misconduct alleged by plaintiffs relates entirely to activities performed by the individual defendants in their capacity as directors and officers of [the debtor]."  *Loewen*, 2001 WL 530544, at *3.  Put simply, Rite Aid is indispensable to the proceedings, regardless of whether Plaintiff is willing to admit it.

Plaintiff also argues the *Adelphia* factors are improper because "use of this test has been extraordinarily rare."  Opp. at 8.  Yet plaintiff points to no case since *United National Insurance* in which a court declined to apply these factors in the context of a motion to stay pending bankruptcy.  That the issue may not have been recently raised does not mean the test is improper.

Plaintiff would instead have the Court apply the standard factors for a motion to stay. The Individual Defendants do not dispute that "courts far more commonly consider [those] factors when deciding whether to grant a discretionary stay."  Opp. at 8-9.  That is because courts far more commonly consider motions to stay *outside the context of bankruptcy*.  When

considering stays related to bankruptcy proceedings, courts apply the more tailored *Adelphia* factors.

Regardless, both sets of factors support a stay in this case.

## II.   The *Adelphia* Factors Support a Stay.

***Plaintiff's interest in the forum.***  In the Motion to Stay, Individual Defendants explained that a stay would not affect Plaintiff's interest in having a forum to pursue the claims.  Mot. at 6-7.  In response, Plaintiff argues this factor weighs against a stay because "granting a stay would leave Plaintiff with no alternative forum to litigate her claims while the Bankruptcy Action is proceeding, which would, in effect, leave Plaintiff without a forum."  Opp. at 10.  This argument fails for multiple reasons.  First, that Plaintiff would not be able to pursue her claims against the Individual Defendants during the stay *is the entire purpose of the stay*.  Second, the suggestion that a stay would leave Plaintiff "without a forum," Opp. at 10, is nonsensical.  This Court would retain jurisdiction over the case, and this forum remains available to hear the case at the appropriate time.  As other courts have found, when a case has "been placed in suspension[,] Plaintiffs retain this Court as a forum in which to bring their claims."  *See Loewen*, 2001 WL 530544, at *1 (E.D. Pa. May 16, 2001) .

Plaintiff also argues that she will suffer "real, certain harm" from any delay a stay would cause.  Opp. at 11.  However, Plaintiff does not identify what these harms are or how they will prejudice her ability to pursue her claims.  This argument, therefore, is not compelling.

***Debtor's Ability to Protect Itself.***  The Individual Defendants explained that allowing the claims to proceed against them would threaten Rite Aid's ability to protect itself by possibly subjecting it to collateral estoppel based on the case against the Individual Defendants.  Mot. at 6.

Plaintiff attempts to downplay the dependency of her Section 20(a) claim against the Individual Defendants on the Section 10(b) claim against Rite Aid as an "inferential leap."  Opp. at 12.  But there is no such leap.  "[L]iability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person," meaning it depends on, *inter alia*, whether the Individual Defendants controlled Rite Aid and whether there is underlying liability against Rite Aid.  *Institutional Invs. Grp. v. Avaya, Inc.,* 564 F.3d 242, 252 (3d Cir. 2009).  Litigating the Section 20(a) claims against the Individual Defendants thus necessarily requires a finding of liability on the claims against Rite Aid.  Rite Aid could then be subject to collateral estoppel on the Section 10(b) claim.  Yet if the case were to proceed at this time, Rite Aid would not be able to participate in the litigation to defend itself on the Section 10(b) claim.[3]

Plaintiff also argues that, because the facts underlying her claims against Rite Aid and the Individual Defendants are identical, Individual Defendants would necessarily raise all arguments and defenses Rite Aid could raise.  This fails to consider that different defendants can—and often do—have different defenses to claims based on the same facts.  For example, Rite Aid might seek to raise a defense based on lack of corporate scienter, which is not available to the Individual Defendants.  *See Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 236 (E.D. Pa. 2021) ("[Corporate scienter] allows a plaintiff to plead an inference of scienter against a corporate defendant without raising the same inferences required to attribute scienter to an individual defendant.") (internal quotation omitted).  Allowing the case to proceed

---

[3] While Plaintiff argues that the Individual Defendants do not claim "the automatic stay concerning Rite Aid will be dissolved and that Plaintiffs' claims will continue against Rite Aid," Opp. at 12, that is because it is not possible for the Individual Defendants to be able to predict the outcome of Rite Aid's pending bankruptcy proceedings.  If it is Plaintiff's belief that the claims against Rite Aid will never proceed, Plaintiff could seek to amend the Complaint, removing Rite Aid as a defendant and eliminating collateral estoppel concerns.  But Plaintiff has not done so.

at this time would force the Individual Defendants to decide whether to (a) raise arguments and defenses that do not apply to them, wasting time and resources, to ensure Rite Aid's arguments are preserved,[4] or (b) risk subjecting Rite Aid to collateral estoppel.

Plaintiff also argues that, because a Motion to Dismiss will not be fully briefed before March 8, 2024 if a stay is not granted, requiring Individual Defendants to begin briefing a Motion to Dismiss would not threaten Rite Aid's ability to protect its own interests. But rather than alleviate concerns over collateral estoppel, this only introduces additional concerns of judicial efficiency. Without a stay, and even absent the concerns raised above, it makes no sense for the parties to brief and the Court to decide the Individual Defendants' Motion to Dismiss, then potentially brief and decide Rite Aid's separate Motion to Dismiss.

Finally, Plaintiff argues that an action cannot be stayed against a non-debtor "solely on collateral estoppel grounds." Opp. at 11 (internal quotation omitted). But the Individual Defendants make no such request; this is one of many factors the Individual Defendants ask the Court to consider. Regardless of the factors the Court ultimately applies, both parties agree the Motion is subject to a multi-factor balancing test. That this one single factor is not dispositive says nothing about the balance of the factors in this case. This factor and the rest support a stay.

***Inconsistent Results and Inefficient Settlement.*** With respect to these two factors, the Individual Defendants argued that, should the claims against the Individual Defendants and Rite Aid proceed separately, such proceedings would undermine the stay of the claims against Rite Aid. In response, Plaintiff argues that the risks of inconsistent results and duplicative

---

[4] This does not even consider whether the Individual Defendants *can* make such arguments. Indeed, Plaintiff argues in her Opposition that some of Individual Defendants' arguments would be better made by Rite Aid. Opp. at 12 n. 9. But Rite Aid's inability to make the arguments to this Court on its own behalf is one of several reasons why this matter should be stayed.

6

proceedings are "purely conjectural." Opp. at 11. But of course the risk of future harm is uncertain. It is impossible to know at this time what the results of this litigation or of Rite Aid's bankruptcy will be. That uncertainty is precisely why a stay would be beneficial and appropriate here. That is also precisely why the Individual Defendants have requested a stay until just after Rite Aid's scheduled confirmation hearing—the Individual Defendants hope to have more clarity at that time regarding the status of the claims against Rite Aid, or at least understand when they will have such clarity.

Plaintiff also fails to engage with the argument that Rite Aid's insurance policy covering the Individual Defendants will likely be implicated here. Any such implication would affect Rite Aid's liability and obligations, yet Rite Aid would not be able to appear in the litigation. Instead of grappling with this reality, Plaintiff argues that the existence of an indemnification agreement alone "is insufficient to warrant a stay," Opp. at 14. But again, that no single factor warrants a stay says nothing of all relevant factors considered together.

### III.    Plaintiff's Factors Also Support a Stay.

Rather than the *Adelphia* factors, Plaintiff proposes the Court consider three other factors: "(1) whether a stay will simplify the issues and promote judicial economy; (2) the balance of the harm to the parties; and (3) the length of the requested stay." Opp. at 9 (quoting *Giovanni v. United States Dep't of the Navy*, No. 16-cv-04873, 2019 WL 6839941, at *1 (E.D. Pa. Dec. 16, 2019)). These factors are fundamentally similar to the *Adelphia* factors but are not tailored to the bankruptcy context, as the *Adelphia* factors are. Nonetheless, even under Plaintiff's proposed factors, a stay is appropriate here because it would not harm Plaintiff (whereas lack of a stay would harm the Individual Defendants), would be reasonably short, and would promote judicial efficiency.

***Balance of Harms.***   On this factor, Plaintiff again asserts vague arguments that she will be harmed by a stay without identifying any specific harm.   The closest she comes is arguing that, in general, "delays lead to the deterioration of evidence," Opp. at 13, but she does not identify any evidence that is at risk of deterioration.   And, as Plaintiff points out, discovery in this case is stayed during the pendency of any motion to dismiss anyway.   Additionally, as Plaintiff also points out, the alleged false statements were made almost six years ago.   After six years, Plaintiff has not identified any deterioration that would occur in the next six weeks.

In contrast, the absence of a stay risks significant harm to the Individual Defendants.   *See supra* 4-7; Mot. at 5-8.   Plaintiff attempts to downplay this harm by arguing "it is telling" that three of the Individual Defendants are also named in separate class action securities litigation but have not sought stays in those actions.   Opp. at 13.   As a preliminary matter, defendants Donigan and Schroder filed a motion to stay the claims against them in the *Page* case on January 22, 2024.   *See Page v. Rite Aid Corporation et al.*, Case No. 2:22-cv-4201-KBH, Dkt. No. 41 (E.D. Pa. Jan. 22, 2024).   Further, the action in which Burr is named as a defendant relates to Burr's role as a Director of SVB Financial Group – not Rite Aid.   *See City of Hialeah Employees Retirement System et al. v. Becker et al.*, 3:23-cv-1697-JD (N.D. Ca.) (consolidated into *In re SVB Financial Grp. Sec. Litig.*, Case No. 3:23-cv-01097-JD, Dkt. No. 82 (N.D. Cal. Nov. 30, 2023)).   There is nothing "telling" about Burr choosing not to seek a stay based on Rite Aid's bankruptcy in a case that does not involve Rite Aid at all.

***Duration of Stay.***   Plaintiff argues that the duration of the requested stay is unreasonable because the case has been pending for over a year.   But this factor considers the duration of the *stay*, not the duration of the *litigation*.   At the time of filing this Reply, the stay will last less than six weeks.   This short length of time is reasonable.   *See City of Philadelphia v. Kidde Fenwal,*

8

*Inc.*, No. 22-cv-4779, 2023 WL 1805199, at *3 (E.D. Pa. Feb. 7, 2023) (granting a motion to stay the first week of February pending a decision by the Judicial Panel on Multidistrict Litigation in part because "the duration of the requested stay will likely be short, given that the JPML has a set hearing date for March").

*Simplified Issues and Judicial Economy.*  Plaintiff argues that "it is uncontroverted that zero judicial resources will be conserved by delaying the progress of Plaintiff's claims as well as those of potential class members."  Opp. at 15-16.  Not so.  If the Individual Defendants are forced to proceed on a motion to dismiss and the case against Rite Aid later proceeds, the Court will duplicate its efforts in deciding a second motion to dismiss.  And as the case against the Individual Defendants progresses, more duplicative proceedings will be necessary and thus more judicial resources wasted.  Further, proceedings related to collateral estoppel against Rite Aid could be avoided with a stay and thus would waste additional judicial resources.

Plaintiff does not address the piece of this factor that considers "whether a stay will simplify the issues" in the case.  *Giovanni v. United States Dep't of the Navy*, No. CV 16-04873, 2019 WL 6839941, at *1 (E.D. Pa. Dec. 16, 2019).  That is unsurprising given that the potential for simplifying the issues before the Court—and avoiding unnecessary proceedings—is one of the primary bases for the Individual Defendants' request to stay the case until after Rite Aid's bankruptcy confirmation hearing.  The Individual Defendants expect that, following the hearing, the parties will have additional clarity regarding the status of the claims against Rite Aid, which could allow the parties to simplify the questions at issue in the case.

Accordingly, even under Plaintiff's factors, a stay is appropriate in this case.

## IV.    CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that this Court grant their Motion and stay this case through March 8, 2024.

Dated: January 30, 2024

Respectfully submitted,

/s/ Michael L. Kichline
Michael L. Kichline (Bar No. 62293)
Laura Hughes McNally (Bar No. 310658)
Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001
michael.kichline@morganlewis.com
laura.mcnally@morganlewis.com

*Counsel for Defendants Heyward Donigan, Matthew C. Schroeder, James Peters, Jocelyn Konrad, John T. Standley, Darren W. Karst, and Elizabeth Burr*

**CERTIFICATE OF SERVICE**

I, Laura Hughes McNally, hereby certify that on January 30, 2024, I caused a copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

/s/ Laura Hughes McNally
Laura Hughes McNally