# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID HOLLAND, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HEYWARD DONIGAN, MATTHEW C. SCHROEDER, JAMES PETERS, JOCELYN KONRAD, JOHN T. STANDLEY, DARREN W. KARST, and ELIZABETH BURR <br><br> Defendants. | Class Action <br><br> No. 2:23-cv-02962- KBG <br><br> Honorable Kelley Brisbon Hodge |

**PLAINTIFF'S SURREPLY IN FURTHER OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

Dated: November 11, 2024

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins
Gregory M. Potrepka
Amanda D. Foley
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
afoley@zlk.com

*Lead Counsel for Lead Plaintiff and
the Class*

In their Moving brief (ECF No. 64-3), Defendants spent twenty (20) pages challenging the falsity element of Plaintiff's Section 10(b) claim. Buried in a one-sentence footnote on page 37, Defendants added that "much of the content" of the RxEvolution statements "is inactionable 'immaterial puffery,'" but identified only *one* statement as puffery:  Defendant Peters' statement at ¶199 ("But I am energized [by] the progress we're making as we aggressively implement the RxEvolution strategy."). *Id*. at 37 n.26. Plaintiff responded that Defendants "only identify *one* challenged statement" as "puffery," explained why it was not puffery in context, and cited caselaw in support of Plaintiff's argument. ECF No. 66, at 21-22.  As Plaintiff stated in her brief, "to the extent Defendants fail to identify the statements they contend are puffery, they have waived that argument." *Id*. at 22. *See also Biddle v. D'Ilio*, 2024 WL 1173718, at *15 (D.N.J. Mar. 19, 2024) ("axiomatic" that party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief," refusing to "address the new factual basis" for party's argument "raised for the first time in his reply brief."); *Nissan World, LLC v. Mkt. Scan Info. Sys., Inc.*, 2014 WL 1716451, at *10 (D.N.J. Apr. 30, 2014) ("perfunctory and undeveloped arguments" "deemed waived").

On Reply, Defendants suddenly seek to slip in a challenge to *fifteen additional* paragraphs of the Complaint, that they nowhere identified as containing immaterial puffery in their opening Motion.[1] Defendants indeed waived their argument as to the 15 previously unidentified statements, as there was no way for Plaintiff to divine what else (if anything) in the Complaint was being challenged as puffery and meaningfully respond, especially since whether a statement is "immaterial puffery" depends on the context in which each statement is made. The prejudice to parties from such sandbagging (whether

---

[1] Defendants try to make up for their omission by blithely declaring that "Plaintiff fails to refute that many of the RxEvolution [] Statements are immaterial puffery" (ECF No. 67 (Reply) at 18) and that "Defendants argued many of the RxEvolution [] Statements are inactionable 'immaterial puffery.'" *Id.* at 18-19. Of course, how can a party "refute" an "argument" that "many" such statements were puffery, when the opposing party has only identified *one*?

deliberate or due to nonchalance), coupled with the potential to spur endless briefing to respond to new arguments, provides sound rationale for the waiver rule. *See Biddle*, 2024 WL 1173718, at *15.[2]

To the extent the Court considers it, Defendants' new "puffery" challenge to the additional 15 statements fails for similar reasons as their challenge to ¶199. ¶¶198, 204, 205, 209, 211, 214, 215, 224, 226, 229, 230, 233, 235, 237, 240.

To begin, Defendants simply string-cite all 15 new paragraphs without any explanation of how or why each statement(s) (or portions thereof), by its language and in context, is "immaterial puffery." Reply at 19. Thus, Plaintiff *still* does not know which portions of the statements Defendants challenge as puffery, or why. Nonetheless, although each of these statements is unique, each shares a common characteristic of materiality because it relates to the status of Rite Aid's key RxEvolution plan, which Defendants emphasized, and analysts understood, as crucial to Rite Aid's turnaround, and indeed, to its ability to stave off bankruptcy. ¶¶4-7, 112-13, 217, 224. *See Edge v. Tupperware Brands Corp.*, 2023 WL 6310236, at *4-5 (M.D. Fla. Sep. 28, 2023) (statements about "the status of the Turnaround Plan represent[s] important information to a reasonable investor."). That many of these statements were made in response to analysts' or financial reporters' inquiries also supports materiality. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006).

Additionally, each statement is not puffery because it contains objective, verifiable facts. *See* ¶198 (assertions Rite Aid was "aggressively accelerating" and "hadn't missed a beat" in implementing "the key initiatives" of the RxEvolution plan—objectively verifiable as Plaintiff alleges Rite Aid had drastically scaled down, and diverted nearly all resources from, RxEvolution, and had effectively abandoned it, which could not possibly reasonably be considered "aggressive[]" "accelerat[ion]" or

---

[2] Further, this Court's rules state that "Reply briefs" should "not repeat[] arguments in the [moving] brief[.]" (Policies and Procedures, III.D.) Either Defendants are making a *new* argument in their Reply by asserting "puffery" as to 15 additional statements, which is improper, or they are making the same argument as in their moving brief, which is also improper under this Court's rules.

"implement[ation]" (*e.g.*, either it was accelerating or decelerating, being implemented or not being implemented), or not "miss[ing] a beat"); ¶199 (similar; remainder of that statement not challenged in Defendants' Motion (p.37 n.26), *i.e.*, claiming "we are moving swiftly … to execute our plan [including] building our Stores of the Future"—also objectively verifiable for similar reasons, as Rite Aid was slashing, scaling-down, or abandoning the plan); ¶214 (Donigan claiming the RxEvolution "initiatives [were] well underway" and Rite Aid was "accelerating our actions" in implementing them—objectively verifiable for similar reasons); ¶233 (Donigan claiming "we are unleashing the next evolution of our strategy" and "our RxEvolution is driving our transition"—objectively verifiable for similar reasons). *See In re Cell Pathways, Inc. Sec. Litig.*, 2000 WL 805221, at *9 (E.D. Pa. June 20, 2000) (statements that company was moving "aggressively" with product development actionable).

The newly challenged statements also repeatedly falsely claimed RxEvolution had achieved positive results for Rite Aid: "[w]e continue to grow our business and achieve major milestones in our transformation through the RxEvolution strategy[]" (¶209); Rite Aid's "RxEvolution strategy was not only validated, but proven essential." (¶214); "this year [fiscal 2021] has shown signs of real progress and validation of our strategy." (¶215); Defendants were "executing" their "clear plan," "have transformed our business," are "making [the] investments necessary to drive the long-term health of our business," and "[t]he progress on our RxEvolution strategy validates our belief" that it will improve Rite Aid (¶229); and Rite Aid was "not only exceeding expectations, but also demonstrating that our strategy is gaining momentum." (¶230). These statements were objectively verifiable because Rite Aid had slashed the budget for the RxEvolution, drastically cut the number of Stores of the Future, was far behind stated upgrading plans, had drastically reduced the scope of the promised upgrades, and largely abandoned the RxEvolution. These are quantifiable and measurable then-existing facts (*e.g.*, from lists showing reduced planned Stores of the Future and their features, ¶¶122-26), that render objectively false Defendants' claims that the Plan's progress was "exceeding expectations,"

"achiev[ing] major milestones," "gaining momentum," or that Defendants were ramping up the promised "investments," as all objective measures showed the trajectory was in the opposite direction. *See Cell Pathways,* 2000 WL 805221, at *9 (claims development efforts were "proceeding as planned" actionable); *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) (even "general statements of optimism," "taken in context," may be misleading when they address "aspects of a company's operation that the speaker knows to be performing poorly."); *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *13-14 (D.N.J. July 27, 2018) (claims merger benefits on track actionable).

Defendants also misstated that "customer feedback to our [Stores of the Future] pilot stores has been outstanding," and Rite Aid would roll out new Stores of the Future in Q4 and "continue to upgrade our entire fleet" to be Stores of the Future (¶211), with "many more [Stores of the Future] to come," overstated the nature of the upgrades to Rite Aid's stores; and, regarding pharmacists coming out into the store to engage with customers, claimed that "[o]ur pharmacists are embracing this new role [and] love the fact that they're engaging in a way they envision when they actually chose to become a pharmacist" (¶204), "love being in front of the customers" and "love that we actually physically put them there" (¶205). These statements are objectively verifiable because *negative* feedback could be measured by, *inter alia*: the fact Rite Aid *shut down* Telehealth "wellness" rooms because they were not being used; category sales reports showing organic and "natural" products were not selling; and store upgrades and pharmacist initiatives could be evaluated from the lists of Stores of the Future actually constructed and features actually added, site visits to pharmacies, discussions with pharmacists (as the CWs had), and reports on pharmacist departures. *See Tellabs*, 513 F.3d at 706-07 (statements of "strong acceptance" of product and "embracing" of sales initiative held actionable).

Defendants also falsely attributed Rite Aid's growth to the RxEvolution strategy, when in fact the growth was due to COVID-related revenues, which were masking Rite Aid's failure to implement

4

RxEvolution and resultant declining underlying performance. *See* ¶¶224, 235 (claiming Rite Aid demonstrated "organic growth…even in the middle of a pandemic[,]" "we have shown that on the front end, we can take market share[,]" and assuring investors that because the "underlying business is improving," the core business revenue would be there to replace COVID revenue as "[w]e expect benefits from several areas to offset this gap"); ¶226 (falsely claiming that because of Rite Aid's "merchandise mix" and "organic product offerings" "we really are starting to see the results and the traction that we were hoping for"); ¶240 (falsely claiming "our core scripts are up. And that's just the beginning," "we've shown that we can grow our scripts"); ¶237 ("[w]e expect to see continued growth in comp sales and script growth in our core business after excluding the impact of COVID"). These statements are objectively verifiable from Rite Aid's core, non-COVID-related operational results and trends, compared to overall operational results and trends, including confirmation from concurrent reports of whether Rite Aid's core business was in fact improving (which post-Class Period disclosures indicate it was not), whether "core scripts [were] up," or whether Rite Aid had in fact "take[n] market share." *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, 2022 WL 889158, at *10 (E.D. Pa. Mar. 25, 2022) (statements attributing reasons for success not puffery).[3]

For the above reasons, and those in Plaintiff's Opposition, Defendants' Motion must be denied.

Dated: November 11, 2024                    Respectfully submitted,

                                            **LEVI & KORSINSKY, LLP**

                                            */s/ Shannon L. Hopkins*
                                            Shannon L. Hopkins
                                            Gregory M. Potrepka
                                            Amanda D. Foley
                                            1111 Summer Street, Suite 403
                                            Stamford, CT 06905
                                            Tel: (203) 992-4523

---

[3] Plaintiff believes Defendants take additional liberties in their Reply, but focus this Surreply on the most egregious example. Other examples include Defendants' raising of the group pleading doctrine as a basis for dismissal (Reply 1-5), which they did not raise in their Motion. As suggested by Defendants' failure to raise it in their Motion, Plaintiffs do not rely on that doctrine.

Fax: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
afoley@zlk.com

**BIELLI & KLAUDER, LLC**

Ryan M. Ernst (Juris No. 202191)
Melissa M. Hartlipp (Juris No. 333323)
1204 N. King Street
Wilmington, DE 19801
Tel: (302) 803-4600
Email: rernst@bk-legal.com
Email: mhartlipp@bk-legal.com

*Lead Counsel for Lead Plaintiff and the Class*

6